**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| IN RE PORTLAND GENERAL ELECTRIC COMPANY SECURITIES LITIGATION | Case No. 3:20-cv-1583-SI<br><br><br><br>CLASS ACTION |

**DECLARATION OF TA'SHIA S. GORDON ON BEHALF OF LEAD PLAINTIFF IN SUPPORT OF (1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, CERTIFICATION OF CLASS AND OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL AND (2) LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

1

I, TA'SHIA S. GORDON, declare as follows:

1.      I am a Special Assistant Attorney General for the State of Mississippi in the consumer protection division of the Mississippi Attorney General's Office.  In the State of Mississippi, the Office of the Attorney General appears for the State in civil litigation in all cases in which the State may be a party, including cases involving the Public Employees' Retirement System of the State of Mississippi ("PERS").  I am one of the Special Assistant Attorneys General primarily responsible for monitoring and overseeing the above-captioned action (the "Action") on behalf of PERS.

2.      PERS provides retirement benefits for its state employees who work in state government, public schools, universities, community colleges, municipalities, the state legislature, and highway patrol, among other state funded entities and services.  These retirement benefits help retain a strong public workforce in the state of Mississippi. The 10-member Mississippi PERS Board of Trustees includes the State Treasurer, a gubernatorial appointee who is a member of PERS, two retirees, two state employees, and one representative each of public schools and community colleges, institutions of higher learning, counties, and municipalities. The Board is responsible for designating the System's executive director and for establishing the policies for administration of the trust.  The Board also works to carry out the intent and purposes of the state legislature by establishing rules and regulations for the administration of PERS and the transaction of its business.

3.      By Order entered November 10, 2020 the Court appointed PERS as Lead Plaintiff in the Action (ECF No. 16).  We had selected and retained Grant & Eisenhofer as our counsel, and the Court also appointed G&E as Lead Counsel in the action.  I was the principal person

acting for PERS in the Action and am fully familiar with the facts and circumstances of the litigation, the proceedings, and the proposed settlement.

4.    I respectfully submit this Declaration in support of: (a) final approval of the $6,750,000 settlement (the "Settlement") in the Litigation reached between Lead Plaintiff on behalf of the Class and Defendants in the Litigation; (b) approval of the Plan of Allocation; and (c) approval of Lead Counsel's application for an award of attorneys' fees equaling 25% of the settlement fund (after deduction of Lead Counsel expenses), plus reasonable expenses.

5.    PERS understands that the Private Securities Litigation Reform Act of 1995 was intended to encourage institutional investors with large losses, such as PERS, to manage and direct securities fraud class actions.    In seeking appointment as Lead Plaintiff and Class Representative, PERS understood its fiduciary duty to serve the interests of the Class members by supervising the management and prosecution of the case.

6.    Following its appointment as Lead Plaintiff, PERS  kept itself fully informed regarding case developments and procedural matters over the course of the Litigation, including regular communications with Lead Counsel.    Lead Plaintiff was involved directly in all significant decisions concerning litigation strategy, mediation, and potential settlement.

7.    Lead Plaintiff stayed apprised of new developments as Lead Counsel conducted its initial investigation into the conduct giving rise to the claims in this Action. In particular, I received regular updates from Lead Counsel on developments in the case, including as to the hiring of investigators, the status of the investigation, and insights gleaned from experts. Additionally, I and others among my staff reviewed drafts of the amended complaint and the brief in opposition to Defendants' motion to dismiss the amended complaint, as well as Defendants' motion itself.

8.      After Defendants approached Lead Counsel concerning the possibility of seeking a mediated settlement, PERS closely monitored developments in the mediation, including by reviewing settlement memoranda created in preparation for the mediation session.  We also discussed developments and strategies on several occasions with Lead Counsel prior to the mediation.  On June 10, 2021, when the parties participated in a day-long mediation session, I and my colleague, Tricia Beale, personally attended and actively participated in the mediation. Throughout this period, I discussed with Lead Counsel, in advance, all settlement demands made by Lead Counsel, and reviewed all offers made by Defendants in response, determining with Lead Counsel the strategy to obtain the best possible result for the class.

11.      In considering the Settlement, PERS evaluated the risks of continuing this Litigation.  PERS understands these risks to include the significant risk that Lead Plaintiff will be unable to overcome Defendants' Motion to Dismiss, which argued that Lead Plaintiff's claims failed because it did not allege (a) an actionable false statement or omission, (b) scienter, and (c) loss causation.  ECF No. 36.  Lead Plaintiff recognized that had it lost any of these arguments, all of its claims, or a substantial portion of it claims, could have been eliminated at the motion to dismiss phase.  PERS also understands that even if it overcame the Defendants' motion to dismiss, there was some possibility the Court could deny a future motion for class certification. Finally, PERS appreciates that the Class faces the risk of a nominal recovery or no recovery at all, because it might not prevail on liability. For these reasons, PERS authorized Lead Counsel to settle this Litigation for $6,750,000.  PERS believes this Settlement is fair and reasonable, represents an excellent recovery and is in the best interest of the Class members.

12.      While PERS recognizes that any determination of fees is left to the Court, PERS believes that Lead Counsel's application for 25% of the Settlement in legal fees to Lead

4

Plaintiff's counsel is fair and reasonable, in light of the result obtained, the complexity of the prosecution of this action and risks involved, and the time expended on obtaining this result. The fee request also takes into account the length of time that this action has been pending and the risks associated with prosecuting a complex securities fraud action such as this.

13.    Lead Plaintiff also supports Lead Counsel's request for reimbursement of counsel's expenses in the amount of $86,788.67. This is a reasonable request in the context of a case that required hiring a private investigator to interview former employees, as well as consultation with an expert in the energy industry in order to draft both the Complaint and the response to the Motion to Dismiss. Lead Counsel also consulted a damages expert prior to entering into mediation. For each of these expert engagements that required substantial resources, PERS consented to the engagements.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of January, at Jackson, Mississippi

Ta'Shia S. Gordon

5