**Keith S. Dubanevich**, OSB No. 975200
**Keil M. Mueller**, OSB No. 085535
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 S.W. Oak Street, Suite 500
Portland, OR  97204
Email:  kdubanevich@stollberne.com
        kmueller@stollberne.com
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840

*Liaison Counsel for the putative class*

**Daniel L. Berger**, *admitted pro hac vice*
**Barbara Hart**, *admitted pro hac vice*
**Caitlin M. Moyna**, *admitted pro hac vice*
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone:    (646) 722 8500
Facsimile:    (646) 722 8501
Email:  dberger@gelaw.com
        bhart@gelaw.com
        cmoyna@gelaw.com

*Lead Counsel for the putative class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE PORTLAND GENERAL ELECTRIC COMPANY SECURITIES LITIGATION | Case No. 3:20-cv-01583-SI<br><br>CLASS ACTION |

**DECLARATION OF DANIEL L. BERGER IN SUPPORT OF (1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, CERTIFICATION OF CLASS AND OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL AND (2) LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

1 – DECLARATION OF DANIEL L. BERGER

Daniel L. Berger, a principal at Grant & Eisenhofer P.A, ("Grant & Eisenhofer" or "Lead Counsel"),[1] submits the following declaration in support of (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, Certification of Class and of Class Representative and Appointment of Class Counsel; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, and declare as follows:

1.      I, Daniel L. Berger, am a Principal of the law firm Grant & Eisenhofer, which is the Court-appointed Lead Counsel for the Class, and counsel for Lead Plaintiff Mississippi Public Employees' Retirement System ("Lead Plaintiff" or "PERS").  I am an attorney duly licensed to practice in all state courts of the State of New York, the Eastern and Southern Districts of New York, and the United States Courts of Appeals for the 1st, 2nd, 3rd, 6th, 7th, and 9th Circuits.  I have been admitted *pro hac vice* to appear before the Court in this Action.[2]  I have been actively involved in the prosecution and resolution of this Action, am familiar with its proceedings, and have personal knowledge of the matters set forth here based on my active participation and supervision of material aspects of the Action as well as my discussions with my colleagues at Grant & Eisenhofer.  If called on, I can testify about the matters set forth below.

2.      Because of the Court's familiarity with the Action, this Declaration does not elaborate on every event during this litigation.  Rather, the Declaration provides the Court with a summary of the material events leading to the Settlement and the basis on which Lead Counsel and Lead Plaintiff recommend their final approval, and it is also intended to assist the Court in its evaluation of Lead Counsel's application for an award of attorneys' fees and expenses.

---

[1] Unless otherwise defined, all defined terms used here have the same meanings as set stated in the Stipulation of Settlement ("Stipulation" or the "Settlement Agreement") (ECF No. 45-1.)

[2] ECF No. 30.

## I.    OVERVIEW

3.    Lead Plaintiff has obtained a recovery of $6.75 million in cash to benefit of the Settlement Class.  If approved, the Settlement will resolve all claims against Defendants Portland General Electric Company ("PGE"), Maria Pope and James Lobdell (collectively with PGE, "Defendants").  The Settlement Class is defined as all persons or entities who purchased or otherwise acquired PGE common stock during the period from February 13, 2020, and August 24, 2020 inclusive, and were damaged thereby.

4.    Although Lead Plaintiff and Lead Counsel believe that the claims asserted are meritorious, continued litigation through trial—and the appeals that would likely ensue—pose significant risks that made any recovery uncertain.

5.    The $6.75 million recovery results from hard-fought litigation and Lead Counsel's diligent prosecution of the Action, which included, among other things:

i.    Conducting an extensive factual investigation, including the identification of potential witnesses, and preparing a detailed and comprehensive Consolidated Class Action Complaint (ECF No. 26) to satisfy the heightened pleading standards of the PSLRA;

ii.    Overseeing the work of a private investigator to investigate claims and examine witnesses;

iii.    Consulting experts in areas requiring specialized knowledge such as the energy industry and damages;

iv.    Vigorously opposing the motion to dismiss filed by Defendants;

v.    Preparing a mediation statement on damages; and

vi.    Preparing for and participating in extensive settlement negotiations conducted over the course of a day-long mediation session, mediated by Mr. David Murphy, Esq. of Phillips ADR, a widely respected mediator.

6.    By the time of the Settlement, Lead Plaintiff and Lead Counsel had a thorough and realistic understanding of the strengths and weaknesses of the parties' positions concerning

3 – DECLARATION OF DANIEL L. BERGER

liability and damages, their respective abilities to prove or defend the claims at trial, and Defendants' ability to pay a substantial judgment.

7.    The Settlement's $6.75 million cash recovery is well within the range of reasonableness and achieves the certainty of a substantial recovery to the Settlement Class. Particularly given the substantial risks—including the significant risk of obtaining no recovery at all—Lead Counsel firmly believe we obtained the best available recovery on behalf of the Settlement Class.

8.    In connection with the Settlement, Lead Counsel proposed a Plan of Allocation to equitably distribute the Net Settlement Fund consistent with Lead Plaintiff's theory of damages. The Plan of Allocation was developed by Lead Plaintiff's damages expert in conjunction with Lead Counsel.

9.    For all the reasons discussed in this Declaration, its attached exhibits and in the accompanying memorandum, including the quality of the result obtained and the numerous significant litigation risks discussed fully below, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement and the Plan of Allocation are fair, reasonable, and adequate and should be approved.  In addition, Lead Counsel respectfully submit that their request for attorneys' fees and reimbursement of litigation expenses is also fair and reasonable and should be approved.

## II.    LITIGATION

### A.    OVERVIEW OF THE ACTION

10.    Portland General Electric ("PGE") is an electric utility company based in Oregon.

11.    This dispute arises out of Defendant PGE's statements that the Company did not engage in energy trading for "non-retail purposes."  Lead Plaintiff alleged that these statements were false and misleading in violation of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and that PGE did in fact engage in trading for non-retail purposes, in

4 – DECLARATION OF DANIEL L. BERGER

direct contravention to its public statements and filings. These allegations were based on PGE's own public disclosures, as well as interviews with former PGE employees and consultation with an industry expert.

12.    Lead Plaintiff engaged an expert in the energy industry who reviewed PGE's filings and determined that the Company was increasingly engaging in trading for non-retail purposes—contrary to PGE's repeated public statements. Complaint ¶¶ 5-6. The Complaint asserts that PGE's statements about its trading activity were demonstrated to be false on August 24, 2020, when PGE announced that the Company had sustained a loss of $127 million due to trading positions the Company had taken in the Southwest, which required PGE to purchase energy at sharply inflated prices to deliver the energy it had promised its contractual counterparties. Complaint ¶ 101. The Complaint also alleged that after the August 24, 2020 announcement, the price of PGE shares plummeted, causing substantial losses to investors. Complaint ¶ 8.

13.    Defendants vigorously deny that they violated federal securities laws related to the allegations described above and asserted myriad defenses in response to Lead Plaintiff's claims.

**B.    COMMENCEMENT OF THE ACTION**

14.    Lead Plaintiff filed its initial complaint on October 16, 2020, against defendants PGE, Maria Pope and James Lobdell in the District of Oregon. *Public Employees' Retirement System Of Mississippi v. Portland General Electric Company et al.* Case No. 3:20-cv-1786, ECF No. 1. The complaint asserted claims under Sections 10(b) and Section 20(a) of the Securities and Exchange Act of 1934 (the "1934 Act"). *Id.* Two other complaints were filed by purported shareholders of PGE: *Hessel v. Portland General Electric Co. et al.*, 3:20-cv-01523-SI, No. 3:20-cv-01523-SI (D. Or.), filed on September 3, 2020 (the "Hessel Action"), and *Cannataro v.*

5 – DECLARATION OF DANIEL L. BERGER

*Portland General Electric Co.*, *et al.*, No. 3:20-cv-01583-SI (D. Or.), filed on October 16, 2020 (the "Cannataro Action") (together, the "Related Actions").[3]

15.    On November 2, 2020, Lead Plaintiff Filed a Motion for Consolidation and for Appointment as Lead Plaintiff and Approval of Lead Counsel and Liaison Counsel. ECF No. 7. No other PGE shareholders filed a Lead Plaintiff Motion. On November 4, 2020, the Court granted Lead Plaintiff's motion and consolidated the Action and the Cannataro Action.  ECF No. 16.[4]  It also appointed PERS as Lead Plaintiff and Grant & Eisenhofer P.A. as Lead Counsel.  *Id*.

16.    On January 11, 2021, Lead Plaintiff filed the Complaint, alleging that Defendants disseminated materially false and misleading statements regarding PGE's energy trading during the Class Period.  (ECF No. 26.)  This operative complaint alleged violations of § 10(b) of the Exchange Act and SEC Rule 10b-5 against Defendants, and violations § 20 of the Exchange Act against Maria Pope and James Lobdell.  *Id*.

17.    On March 12, 2021, Defendants PGE, Pope and Lobdell filed a motion to dismiss the Complaint.  (ECF No. 36.)  Lead Plaintiff filed its opposition on May 11, 2021.  (ECF No. 37).

C.    **DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINTS**

18.    From the outset of the Action, Defendants have denied all of Lead Plaintiff's allegations and have consistently maintained, and zealously argued, that they never made statements that were false or misleading.

19.    On March 12, 2021, Defendants moved to dismiss the Complaint.  (ECF No. 36.) Defendants challenged the adequacy of the complaints' allegations, asserting that Lead Plaintiff's claim arising under Section 10(b) failed because it did not allege (a) an actionable false statement or

---

[3] On October 29, 2020, plaintiff in the Hessel Action voluntarily dismissed his complaint without prejudice.
[4] All future references to "ECF No." are to the docket in the earlier filed lead case captioned *In Re Portland General Electric Company Securities Litigation*, Case No. 3:20-cv-1583-SI.

omission, (b) scienter, and (c) loss causation. *Id.* If Lead Plaintiff had lost any of these arguments, all of its claims, or a substantial portion of it claims, would have been eliminated at the motion to dismiss phase. PERS filed its opposition on May 11, 2021. (ECF No. 37.)

### D.    SETTLEMENT

20.    While settlement was ultimately achieved through the parties' participation in mediation, that result was made possible only through Lead Counsel's diligent work and Lead Plaintiff's dedication and persistence over the course of the Action and leading up to the settlement discussions.

#### 1.    Arm's-Length Settlement Negotiations

21.    In spring of 2021, after the parties had briefed the motion to dismiss, Defendants contacted Lead Counsel to initiate settlement discussions. Lead Counsel then consulted with Mr. Torchio to assist with evaluating potential damages to the putative Class. While Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action have merit, mindful of potential weaknesses in Lead Plaintiff's claims as well as the expense and length of continued proceedings necessary to prosecute the Action through trial, Lead Plaintiff believed that it would be beneficial to explore the possibility of a settlement.

22.    The parties first held a virtual mediation session on June 10, 2021. That full-day session was conducted by David Murphy, Esq., of Phillips ADR, who joined Phillips ADR as a mediator in April 2017. Mr. Murphy has three decades of experience representing plaintiffs and defendants before courts and arbitration panels throughout the United States. A retired partner of Wachtell, Lipton, Rosen & Katz, David Murphy's practice focused on litigating and resolving complex disputes involving investors, consumers, regulators and leading businesses. The parties exchanged mediation briefs before the mediation session and held certain discussions prior to the full-day session. During the mediation, Mr. Murphy engaged in extensive discussions in an effort

7 – DECLARATION OF DANIEL L. BERGER

to find common ground between the parties' respective positions. The negotiations were difficult and complicated, but ultimately the Settling Parties each accepted the mediator's proposal to resolve the action on a double-blind basis on June 13, 2021.

23.     With the benefit of the parties' settlement memoranda and mediation session and a thorough understanding of the strengths and weaknesses of their positions, the Settling Parties executed a Term Sheet memorializing their agreement, which included, among other things, the Settling Parties' agreement to fully and finally resolve the Action in return for a settlement payment of $6,750,000 for the benefit of the Class, subject to the negotiation of the terms of the Stipulation of Settlement and approval by the Court. On June 25, 2021, the parties informed the Court that the parties had reached an agreement in principle to settle the litigation.

24.     Over the next few weeks, Lead Counsel worked diligently to prepare the Stipulation of Settlement and accompanying documents to bring the settlement to the Class for its consideration. On July 16, 2021, Lead Plaintiff moved to preliminarily approve the settlement and the manner of giving notice of the settlement to the proposed class. (ECF Nos. 45 & 45-1.)

25.     On August 10, 2021, the Court granted the motion. (ECF No. 46.) In its Order, the Court scheduled a final settlement approval hearing for March 11, 2022. *Id.*

## III.    THE PLAN OF ALLOCATION

26.     The Plan of Allocation is set forth in the Notice of Pendency and Proposed Settlement of Class (hereinafter "Plan of Allocation").[5] It provides that, after deduction of any Court-awarded attorneys' fees and expenses, notice and administration costs, escrow fees, and all applicable taxes,

---

[5] The Notice of Pendency and Proposed Settlement of Class is included in the Claims Package, which is Exhibit A to the Declaration of Joseph Mahan on Behalf of Claims Administrator Epiq ("Mahan Decl.").

8 – DECLARATION OF DANIEL L. BERGER

the balance of the Settlement Fund ("Net Settlement Fund") will be distributed according to the Plan of Allocation approved by the Court.

27.    The Plan of Allocation was developed on the basis of an event study performed by Mr. Torchio, and, as is typical in such cases, it was calculated using estimates of the impact of the relevant corrective disclosures.  It provides that the Net Settlement Fund will be distributed to Class Members who submit valid, timely Proof of Claim forms to the Claims Administrator and that only those who suffered a Recognized Loss on their PGE shares traded during the Class Period will be eligible to participate ("Authorized Claimants").  The Plan of Allocation provides that Class Members will be eligible to participate in the distribution of the Net Settlement Fund only if they purchased or otherwise acquired PGE shares from February 13, 2020 through August 24, 2020.  A Settlement Class Member will be eligible to receive a distribution Fund only if that person has an overall loss, after all profits from transactions in PGE shares are subtracted from all losses.  No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

28.    The proposed Plan of Allocation was designed to achieve an equitable and rational distribution of the Net Settlement Fund, consistent with Lead Plaintiffs' damages theory.  It was developed in consultation with Frank Torchio of Forensic Economics, who has more than thirty years of experience in assisting with complex financial valuations and damages issues, including the development of plans of allocation.  It is based on Mr. Torchio's analysis of allegations and it was prepared without reference to any particular trading patterns of Lead Plaintiff.  Lead Plaintiff and Lead Counsel believe that the Plan provides a fair and reasonable method to equitable distribute the Net Settlement Fund among Authorized Claimants.

9 – DECLARATION OF DANIEL L. BERGER

### A.    ELIGIBLE STOCK

29.    The shares for which an Authorized Claimant may be entitled to receive a distribution from the Net Settlement Fund consist of  PGE common stock purchased or otherwise acquired during the Class Period.

### B.    RECOGNIZED LOSS AMOUNTS

30.    For each purchase or acquisition of PGE stock that is properly documented, a "Recognized Loss Amount" will be calculated according to the formulas described in the Plan of Allocation.  Such "Recognized Loss Amounts" will be aggregated across all purchases to determine the "Recognized Claim" for each Class Member.

31.    The Plan of Allocation provides that the Claims Administrator will allocate to each Authorized Claimant a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants.  The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts to be paid to Authorized Claimants pursuant to the Settlement.  Rather, the computations under the Plan of Allocation are only a method to weigh the claims of claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

32.    The Court retains jurisdiction to allow, disallow, or adjust the claim of any Class Member on equitable grounds.

### C.    CALCULATION OF RECOGNIZED LOSS FOR EXCHANGE ACT CLAIMS

33.    A Recognized Loss Amount is calculated for each Settlement Class Member who purchased or otherwise acquired PGE stock during the Class Period of February 13, 2020 through

10 – DECLARATION OF DANIEL L. BERGER

August 24, 2020, based on when that claimant purchased and sold its PGE shares, or retained such PGE shares beyond the end of this period.

34.    Based on the formulas presented below, a Recognized Loss Amount will be calculated for each purchase or acquisition of PGE stock during the period of February 13, 2020 through August 24, 2020 that is listed on the Proof of Claim and Release form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formula below, that Recognized Loss Amount will be zero.

The Plan of Allocation calculates a Recognized Loss Amount in the following ways for Authorized Claimants :

1.    For investors who sold prior to August 25, 2020, the recognized loss per share shall be the lesser of: (i) the alleged inflation per share at the time of purchase minus the alleged inflation per share at the time of sale; and (ii) the difference between the purchase price and the selling price.

2.    For investors who sold from August 25, 2020, through November 20, 2020, the recognized loss per share shall be the lesser of: (i) the alleged inflation per share at the time of purchase; and (ii) the difference between the purchase price and the average closing price between August 25, 2020 and the date of sale.

3.    For investors who retained at the close of trading on November 20, 2020, the recognized loss per share shall be the lesser of: (i) the alleged inflation per share at the time of purchase; and (ii) the difference between the purchase price and $38.35.

D.    **NOTICE TO THE CLASS AND THE CLASS'S REACTION**

35.    Submitted with this motion is the Declaration of Joseph Mahan, on behalf of Class Administrator Epiq, which provides details confirming that every aspect of the notice program provided for in the Court's Notice Order was followed.

36.    Pursuant to the Notice Order, Settlement Class Members' objections to, or requests to be excluded from, the Settlement, the Plan of Allocation, or Lead Counsel's request for fees and expenses are required to be filed and received by February 11, 2022.  To date, Lead Counsel has

11 – DECLARATION OF DANIEL L. BERGER

received no objections to any aspect of the Settlement, and only two requests to be excluded from it.[6] Any objections or additional requests for exclusion will be addressed in the reply papers, which will be filed on or before February 25, 2022.

## IV.    FACTORS AFFECTING SETTLEMENT

### A.    THE RISKS AND COSTS OF FURTHER LITIGATION DEMONSTRATE THE FAIRNESS AND ADEQUACY OF THE SETTLEMENT

37.    Lead Plaintiff faced formidable obstacles to recovery at trial, with respect to liability, and damages.

38.    To prevail on its Section 10(b) claims in this Action, Lead Plaintiff would have to prove each of the following elements: (1) material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation.[7]

39.    Lead Plaintiff faced a heavy burden in establishing scienter.  Defendants likely would have argued—as they did in their motion to dismiss briefing—that the statements of the confidential witnesses were unreliable or did not establish the Defendants' actual knowledge.

40.    Even if it had survived the motion to dismiss, Lead Plaintiff faced significant hurdles associated with engagement in lengthy and challenging discovery, and would likely have faced additional challenges at the summary judgment phase.  After those significant hurdles were surpassed, Lead Plaintiff would have faced a complex trial with issues that are likely to be unfamiliar to the fact-finders, and potential appeals following any favorable judgment, processes

---

[6] Mahan Decl., ¶11 .

[7] *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

which would no doubt take years to resolve. Summary judgment-related motion practice would have likewise been costly and time consuming.

41.    If Defendants had prevailed on any of the dispositive motions or at trial, not only would the proposed Class have expended additional time and money for the continued litigation, but the proposed Class would also recover nothing. And even if the proposed Class succeeded on the merits at trial and recovered a judgment larger than the Settlement Fund, given the time value of money, such a future recovery may not be as beneficial than the recovery available now. Moreover, Defendants would likely appeal any judgment in favor of Lead Plaintiff following a trial, further delaying any potential recovery.

42.    Accordingly, in light of the substantial risks of establishing liability, loss causation, and damages here, Lead Plaintiff and Lead Counsel believe that the recovery of $6.75 million is a favorable outcome for members of the Settlement Class. For all these reasons, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, and that it is in the best interests of the Settlement Class to accept the immediate and substantial benefit conferred by the Settlement, rather than incur the significant risk that the Settlement Class might recover a smaller amount, or nothing at all.

## V.    LEAD PLAINTIFF'S COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES IS REASONABLE

43.    Counsel have diligently litigated this case on behalf of the Class. Counsel undertook this effort on a contingency basis, and collectively have expended 985.55 hours of professional and paraprofessional time litigating this Action. Counsel have also incurred a total of $86,788.59 in litigation expenses.

44.    Lead Plaintiff's counsel respectfully request an award of 25% of the Settlement Fund after deduction of expenses of $86,788.59.

13 – DECLARATION OF DANIEL L. BERGER

45.     Based on the factors discussed below, and on the legal authorities discussed in the accompanying memorandum of law in support of Lead Plaintiff's Motion for Award of Attorneys' Fees and Expenses, Lead Counsel respectfully submit that their request for fees and expenses should be granted.

A.     **THE FEE APPLICATION**

46.     Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submit that the requested fee award is reasonable and should be approved.  As discussed in the memorandum in support of the motion for final approval of settlement and approval of attorneys' fee application, a 25% fee award[8] is fair and more than reasonable for attorneys' fees in common-fund cases like this and is at the low end of the range of percentages awarded in comparable class action settlements in this Circuit and nationwide.

1.     **The Size of the Fund Created and the Number of Persons Benefitted Are Factors That Support the Fee Request**

47.     The creation of a $6.75 million Settlement fund is a favorable result for the Class that will provide Settlement Class Members with a cash recovery that was achieved despite many complexities and risks, while avoiding the substantial expense, delay, risk and certainty of further discovery, dispositive motion practice, trial, and appeal.

48.     Lead Plaintiff's expert calculated total possible damages in this case to be in the range from $46.1 million to $51.3 million.  The Settlement represents a recovery of 13.2-14.6% of the total estimated damages to the Class, which is in line with other recoveries in the Ninth

14 – DECLARATION OF DANIEL L. BERGER

Circuit.[9] *See e.g., Vataj v. Johnson,* 2021 WL 5161927, at *6 (finding that a "2% aggregate recovery is consistent with the 2–3% average recovery that the parties identified in other securities class action settlements."). Furthermore, these figures are extremely conservative, as they are based on a total damages number. Defendants disagree with Lead Plaintiff's estimated damages calculations as well as its percentages and comparisons.

## 2. The Absence of Objections Supports the Fee Request

49. Pursuant to the Notice Order, Class Members' objections to, or requests to be excluded from, the Settlement, the Plan of Allocation, or Lead Counsel's request for fees and expenses must be filed and received by February 11, 2022. While these deadlines have not yet passed, to date there have been no objections submitted as to counsel's request for attorneys' fees or expenses.

## 3. The Skills and Efficiency of Counsel Support the Fee Request

50. Lead Counsel and Liaison Counsel are leaders in the specialized area of securities litigation. As demonstrated by their Firm Résumés, Lead Counsel and Liaison Counsel are highly experienced in the securities litigation. *See* Ex. B of the Berger Decl., Ex. 3 of Dubanevich Decl. Lead Counsel possess extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. In particular, given that this case involved complicated issues and affected a nationwide class, the expertise of Lead Counsel was essential in achieving the result. Informed by this experience, they developed and implemented strategies to secure the $6.75 million Settlement.

---

[9] Cornerstone Research, *Securities Class Action Settlements: 2020 Review and Analysis*, at 23 (2020), *available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis

51.    The quality of the work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. PGE was represented by Skadden, Arps, Slate, Meagher & Flom LLP one of the most respected corporate defense firms in the country. In the face of this experienced, formidable, and well-financed opposition, Lead Counsel was still able ultimately to persuade them to settle the case on terms favorable to the Settlement Class.

### 4.    The Complexity and Duration of the Litigation Support the Fee Request

52.    This Action involved complicated legal and factual issues. The claims in the Complaint required an understanding of complex issues involving energy trading and public utility regulations. Moreover, the loss causation and damages issues required an understanding of complex economic models pertaining to securities valuations and price movements, and required close consultation with Lead Plaintiff's damages expert. Had the litigation proceeded, Defendants would have contested these and other issues through summary judgment, trial, and any appeals. Lead Counsel's depth of skill and experience, including their experience in this District and throughout the country successfully prosecuting securities class actions, allowed Lead Plaintiff and the Settlement Class to achieve a result that might not been achieved by less skillful or experienced counsel.

### 5.    The Risk of Nonpayment Supports the Fee Request

53.    Lead Counsel undertook the prosecution of this case on a contingent-fee basis. The risks assumed by Lead Counsel in bringing these claims to a successful conclusion are described herein, and those risks are also relevant to an award of attorneys' fees.

54.    From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial

16 – DECLARATION OF DANIEL L. BERGER

investment of time and money the case would require.  In undertaking that responsibility, Lead Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and cover the considerable litigation costs that a case like this requires.  With an average lag time of several years to conclude the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

55.     Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies.  As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors, particularly institutional investors, take an active role in protecting the interests of shareholders.  To carry out important public policy, the courts should award fees that adequate compensate stockholders' counsel, taking into account the risks undertaken in prosecuting a securities class action.

56.     Lead Counsel also bore the risk that no recovery would be achieved.  As discussed above, from the outset this case presented multiple risks and uncertainties that could have prevented any recovery at all.  Despite the vigorous and competent efforts of experienced counsel, success in contingent-fee litigation like this Action is never assured.

**6.     The Amount of Time Spent By Counsel Supports the Fee Request**

57.     The time and labor expended by Lead Counsel in pursuing the Action and achieving the Settlement strongly supports the reasonableness of the requested fee. The work Lead Counsel undertook in investigating and prosecuting this case and arriving at the present Settlement has been time-consuming and challenging. The time expended was necessary to achieve a successful result in the prosecution of the Action.

17 – DECLARATION OF DANIEL L. BERGER

58.    The investigation, prosecution, and settlement of the claims asserted in this Action required extensive efforts on the part of Lead Counsel, given the complexity of the legal and factual issues raised by Lead Plaintiffs' claims and the vigorous defense mounted by Defendants. The many tasks undertaken by Lead Counsel in this case are detailed above and include, among other things:

    a.    conducting a comprehensive factual investigation of the claims at issue in the Action, which included, among other things, a review of all relevant public information, searching for and identifying possible witnesses, and analyzing their statements;

    b.    preparing and filing the detailed and particularized consolidated amended complaint based on Lead Counsel's factual investigation.

    c.    vigorously defending Defendants' motion to dismiss;

    d.    closely consulting with experts in the energy industry, loss causation and damages;

    e.    participating in extensive settlement negotiations assisted by the mediator, which included the exchange of information regarding the parties' positions on damages and liability, a formal and a full-day mediation session to reach a settlement in principle.

59.    The substantial amount of time expended by Lead Counsel in researching, investigating, prosecuting, and ultimately settling the claims asserted in the Action is reflected below and in Exhibit A to this Declaration and in the Dubanevich Declaration.

60.    As detailed above, throughout this case, Lead Counsel devoted substantial time to the prosecution of the Action. Throughout the litigation, Lead Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

### 7.     Awards in Similar Cases Support the Fee Request

61.     A review of attorneys' fees awarded in similar cases in this Circuit supports the reasonableness of the 25% fee request. Indeed, in securities class actions, fee awards that exceed the 25% benchmark are common.[10]

### 8.     A Lodestar Cross-Check Supports The Fee Request

62.     Lead Counsel and Liaison Counsel collectively expended 985.55 hours in investigating and prosecuting the Action, for a total lodestar of $624,015.25.[11] The requested fee of 25% of the net Settlement Fund (i.e., $1,665,802.85) therefore represents a multiplier of 2.7 to the lodestar of Lead Plaintiff's counsel.

63.     As I personally oversaw the direction of this litigation, I took efforts to ensure that tasks were performed as expeditiously and efficiently as possible. Assignments were generally given to the most junior associates, counsel and personnel as appropriate. Further, the case was staffed leanly, which ensured that there was minimal duplication or repetition of efforts.

64.     The rates charged at Grant & Eisenhofer for attorney time range from $365 for junior associates to $1,000 per hour for senior partners. These rates were approved by PERS when it decided to retain Grant & Eisenhofer. Further, as Lead Plaintiff recognized, the case involved complex issues requiring expertise in securities fraud litigation, and affected a nationwide class of investors, thus justifying retention of attorneys in New York City.

---

[10] *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) (discussing securities class action settlements and noting "a proposed fee of 25% is consistent, if not below, the average award in similar complex actions"); *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-00540-JLS-AGS, 2021 WL 5632673, at *9 (S.D. Cal. Nov. 30, 2021) ("attorneys' fee awards from settlements involving a common fund, as this Settlement involves, frequently exceed the 25% benchmark").

[11] Lead Counsel's lodestar is $590,856; Liaison Counsel's lodestar is $33,159.25.

19 – DECLARATION OF DANIEL L. BERGER

65. Lead Counsel's rates are in line with those charged by attorneys with comparable experience at New York City law firms. My partner Barbara Hart and I both have decades of experience representing plaintiffs in complex securities class actions. *See* Ex. B at 7, 12. Our rates of $1,000 per hour are in line with – or less than – those charged by counsel of similar experience in New York City. *See* Rosen Decl. in Support of Mot. for Attys' Fees, Ex. 5, Lodestar Chart, *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK), 2021 WL 2453972 (S.D.N.Y. April 9, 2021), Dkt. No. 427-5, at page 2 ($1,150 rate for partner who graduated in 1986); Debtor's Fourth Appl. For Prof'l Comp., Ex. C, Professional and Paraprofessional Fees, *In re Purdue Pharma L.P.*, No. 19-23649-RDD, 2021 WL 3502611 (Bankr. S.D.N.Y. March 17, 2021), Dkt. No. 2512-3, at p. 1 (litigation partners at Davis Polk & Wardwell LLP bill of $1,685 and $1,790 per hour). Ms. Moyna is also an experienced litigator (*see* Ex. B at 28), and her rate of $750 per hour is also in line with similar attorneys in New York City. *See* Lodestar Chart, *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, *supra*, at page 2 ($775 rate for Of Counsel who graduated in 2007); Time Report, *In re Signet Jewelers Ltd. Sec. Lit.*, *supra*, at pages 8, 40 (rate of $750 for senior counsel who graduated in 2000). Finally, Cecilia Stein's billing rate of $365 per hour is in line with those charged by junior associates at other New York City law firms. *See* Lodestar Chart, *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, *supra*, at page 2 ($775 rate for Of Counsel who graduated in 2007); Time Report, *In re Signet Jewelers Ltd. Sec. Lit.*, *supra*, at pages 8, 40 (rate of $750 for senior counsel who graduated in 2000). Ms. Hart, Ms. Moyna, Ms. Stein and myself represent the vast bulk of the time spent on this matter.

66. Based on a granular analysis of each of Lead Counsel's timekeeper's time entries, we have determined the lodestar values attributed to various aspects and stages of the case. These are reflected in the following chart:

20 – DECLARATION OF DANIEL L. BERGER

| Task or Topic | Hours Spent | Lodestar |
|---|---|---|
| Preparation of Lead Plaintiff Motion | 102.7 hours | $68,916.50 |
| Preparation of Complaint (including discussions with experts and overseeing investigators) | 275.1 hours | $159,093 |
| Preparation of Memorandum in Opposition to Motion to Dismiss | 207.7 hours | $141,429 |
| Preparation for Mediation | 50.7 hours | $40,725 |
| Mediation and Subsequent Settlement Negotiation | 74.5 hours | $59,895.50 |
| Preparation of Motion in Support of Preliminary Approval of Settlement | 71.3 hours | $57,745 |
| Preparation of Motion in Support of Final Approval of Settlement | 95.1 hours | $51,433 |
| Administrative Tasks (includes preparation of pro hac vice motions and monitoring of docket) | 47.5 hours | $11,609 |

## VI.    LEAD COUNSEL'S REQUEST FOR AN AWARD OF EXPENSES

67.    Plaintiff's counsel also seek reimbursement from the Settlement Amount of $86,788.59 in litigation expenses that were reasonably incurred in connection with commencing, investigating, litigating, and settling the claims asserted in the Action.

68.    From the beginning of the case, Lead Counsel were aware that they might not recover *any* of their expenses, and, even in the event of a recovery, would not recover any of their out-of-pocket expenditures until the Action might be successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement expenses would not compensate them for the lost use of the funds advanced to prosecute the Action.  Accordingly, Lead Counsel were motivated to and did take

21 – DECLARATION OF DANIEL L. BERGER

appropriate steps to avoid incurring unnecessary expenses and to minimize costs without compromising the vigorous and efficient prosecution of the case.

69.    The expenses for which Plaintiff's counsel seek reimbursement are the types of expenses often incurred in securities class actions. Some of the more significant charges are explained below.

70.    Lead Counsel incurred $35,951.25 in expenses with respect to experts. In this case, experts were vital. The energy industry expert retained by Lead Counsel is a managing director at the Berkley Research Group, with twenty-five years of experience in accounting and energy trading. This expert assisted Lead Counsel to sift through various financial statements and representations by Defendants to determine whether there were, in fact misrepresentations made concerning PGE's energy trading activity. The expert helped review Lead Counsel's allegations and ensure that they were well presented and accurately reflected Lead Plaintiff's allegations regarding the Defendants' energy trading activity. This assistance was necessary for developing a securities fraud complaint which rested on adequately alleging that Defendants' representation to investors regarding its non-retail based energy trading activity were false.

71.    Lead Counsel also incurred expenses related to its retention of Mr. Torchio, an economics expert who was critical to developing Lead Counsel's understanding of the damages in this case. Mr. Torchio is a principle with Forensic Economics; he has over 30 years of experience providing economic and financial testimony in complex litigation and arbitrations. Mr. Torchio assisted Lead Counsel in preparing for mediation by refining certain damages estimates. Mr. Torchio also assisted with the development of the Plan of Allocation in connection with the Settlement.

72.     Lead Counsel also incurred $28,579.68 with respect to its retention of an investigative firm.   After PERS was appointed Lead Plaintiff, Lead Counsel initiated an extensive investigation to develop the facts necessary to support a Section 10(b) case that could withstand the inevitable dismissal motion.   Although Lead Counsel understood that there were serious questions about PGE's representation concerning its energy trading activity, Lead Counsel knew they would require more to establish scienter.   With the assistance of an investigative firm, Lead Counsel was able to locate, contact, and interview potential witnesses, including former employees of PGE.   Four confidential witnesses provided statements that Lead Counsel determined supported the complaint's allegations. The bulk of the investigative costs were incurred in this initial effort to locate witnesses.

73.     Lead counsel also incurred expenses of $17,275 to retain the services of Mr. Murphy, the experienced mediator, whose expertise and negotiation skills were instrumental in enabling the parties to bridge gaps and reach this Settlement.

74.     Case-related research expenses of $1,767.72 were necessary to achieve the result in the Settlement.   This research was conducted to respond to the motions to dismiss filed by Defendants, which included opening and reply memoranda.   Legal research was also essential to developing arguments in the context of discovery disputes and to preparing Lead Plaintiff's open and reply briefs in support of class certification.

75.     Lead Counsel's other expenses are of the kind typically incurred in these types of cases, including travel, photocopying of documents, factual and legal research, messenger service, postage, mediation fees, express mail and next day delivery, transcription of depositions, and other incidental expenses directly related to the prosecution and Settlement of this Action, and therefore should be paid from the Settlement Fund.

23 – DECLARATION OF DANIEL L. BERGER

## VII.    CONCLUSION

76.    For all these reasons, Lead Counsel respectfully requests the Court grant final approval of the Settlement, approve the Plan of Allocation, certify the class and PERS as Class Representative and appoint Lead Counsel as Class Counsel.  Lead Counsel also respectfully requests that the Court award Lead Counsel attorneys' fees in the amount of 25% of the Settlement Amount after deduction of litigation expenses (i.e., $1,665,802.85) and litigation expenses in the amount of $86,788.59, plus the interest earned thereon at the same rate and for the same period as the Settlement Fund.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of January 2022, at New York, New York.

_____
Daniel L. Berger