**Daniel L. Berger**, *admitted pro hac vice*
**Caitlin M. Moyna**, *admitted pro hac vice*
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone:    (646) 722 8500
Facsimile:    (646) 722 8501
Email: dberger@gelaw.com
        cmoyna@gelaw.com

*Lead Counsel for the putative class*

**Timothy S. DeJong**, OSB No. 94066
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 S.W. Oak Street, Suite 500
Portland, OR  97204
Email: tdejong@stollberne.com
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840

*Liaison Counsel for the putative class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| IN RE: PORTLAND GENERAL ELECTRIC COMPANY SECURITIES LITIGATION | Case No. 3:20-cv-01583-SI<br><br>**<u>CLASS ACTION</u>** |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
<u>MOTION TO DISTRIBUTE THE NET SETTLEMENT FUND</u>**

**CERTIFICATION OF COMPLIANCE WITH LR 7-1**

Defendants do not oppose this motion.

**MOTION**

Lead Plaintiff, by and through Lead Counsel Grant & Eisenhofer P.A. and Liaison Counsel Stoll Stoll Berne Lokting & Shlatchter PC, respectfully submits this memorandum in support of its motion to (i) accept the administrative determinations by Epiq Class Action & Claims Solutions, Inc. (the "Claims Administrator") concerning the acceptance and rejection of claims submitted by putative Class members in response to the notice of the settlement of this securities class action; (ii) authorize the Claims Administrator to deem timely certain claims filed after the claims submission deadline and to deem the claimants who submitted these claims as Authorized Claimants; (iii) bar any claims submitted after the claims submission deadline, other than those listed on Exhibit C-2 to the Declaration of Joseph Mahan dated February 26, 2024 ("Mahan Declaration"), from receiving any distributions from the Net Settlement Fund; (iv) accept the Claims Administrator's calculations of Recognized Loss for Authorized Claimants in accordance with the Plan of Allocation that was approved by the Court on March 28, 2022 (ECF No. 57); (v) approve payment of the Claims Administrator's fees and expenses in connection with conducting the initial distribution of the Net Settlement Fund; (vi) authorize distribution of the Net Settlement Fund to Authorized Claimants on a *pro rata* basis based on the Authorized Claimants' Recognized Losses; (vii) for any funds remaining after a reasonable period of time following the initial distribution of the Net Settlement Fund, after payment of claims administration fees and expenses as ordered herein, and after reasonable and diligent efforts by the Claims Administrator to contact claimants who have not cashed their payments, authorize the Claims Administrator to consult with Lead Counsel to determine if a redistribution of the

- 1 -  LEAD PLAINITFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISTRUBUTE THE NET SETTLEMENT FUND

remaining Net Settlement Fund to Class Members who cashed their initial distribution check is cost effective, after taking into consideration payment of any additional costs and expenses that would be associated with a redistribution; (viii) release any additional claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, or any person or entity involved with the administration and distribution of the Net Settlement Fund; and (ix) authorize the destruction of Proof of Claim forms and related documents after one year, for hard-copy documents and after three years, for electronic documents.

## MEMORANDUM OF LAW

### I.    FACTS AND ARGUMENT

On July 10, 2021, Lead Plaintiff, acting on behalf of the Class, entered into a Settlement with Defendants Portland General Electric ("PGE"), Maria Pope and James F. Lobdell (collectively, "Defendants"), as memorialized in the Settlement Agreement.  Under the Settlement, the Class released all claims against Defendants.  In return, Defendants agreed to pay $6,750,000 to the Settlement Fund for the benefit of the Class and deposited the funds into an interest bearing escrow account at Huntington Bank.

By order dated August 10, 2021 (ECF No. 46), the Court preliminarily approved the Settlement and instructed that notice of the Settlement be distributed to the Class.  Pursuant to the notice plan approved by the Court in the Preliminary Approval Order and set forth in the Settlement Agreement, the Claims Administrator undertook all reasonable measures to identify the members of the Class and their addresses.  *See* Declaration of Joseph Mahan dated January 14, 2022 (ECF No. 52).  The Claims Administrator then mailed the Court-approved Notice to members of the Class, posted the Notice on the website established by the Claims Administrator, and caused the Notice to be published in *Investor's Business Daily* and *Business Wire*.  *Id.* at ¶ 6.

The Claims Administrator also established a website and telephonic helpline dedicated to assisting Class members. *Id.* at ¶¶ 7, 9. The website dedicated to the Settlement included all pertinent documents. *Id*. at ¶7.

On March 28, 2022, after a hearing, this Court entered an Order and Final Judgment granting final approval of the Settlement, including the Plan of Allocation which provides for the Plan of Allocation and distribution of the Net Settlement Fund (*i.e.*, the $6,750,000 settlement payment, less fees and costs) to Class members who submitted final claims.

Under the Preliminary Approval Order, the Court appointed the Claims Administrator to administer the Settlement. Through February 26, 2024, the Claims Administrator received and processed a total of 29,131 Claims. Mahan Decl. ¶ 4.

As demonstrated by the Mahan Declaration, the Claims Administrator carefully reviewed all submitted Proofs of Claim. Mahan Decl. ¶¶ 29-32. The claims administration process was subject to a thorough quality assurance review that utilized procedures designed to ensure the correctness and completeness of the claims and of the Claims Administrator's documentation supporting its recommendations regarding distribution of the Net Settlement Fund. *Id*.

During a lengthy process designed to give as many claimants as possible the opportunity to cure any deficiencies in their claims, the Claims Administrator sent a Notice of Deficient Claim Form Submission ("Deficiency Notice") to claimants whose claims were deficient or ineligible. Mahan Decl. ¶¶ 20-22. For claims that were deficient, the Claims Administrator notified the claimant of the deficiency and advised the claimant how to cure the deficiency and the period of time within which to do so. Where a Deficiency Notice was sent, each claimant was notified that unless the deficiency was corrected within a twenty (20) day time period (as

- 3 -  LEAD PLAINITFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISTRUBUTE THE NET SETTLEMENT FUND

required pursuant to the Settlement Agreement), the claim would be rejected if the claimant had not supplied the required documentation or information or if there was any other deficiency. *Id.*

Where claimants failed to cure deficiencies after notice, or where the claims otherwise showed that the claimants were ineligible to receive a share of the Net Settlement Fund (for example, because their purchases of PGE common stock did not occur during the Class Period), the Deficiency Notice notified the claimants in writing of the rejection of their claims. Mahan Decl. ¶ 21. The claims that the Claims Administrator has rejected as ineligible are identified in Exhibit C-3 to the Mahan Declaration.

For claimants who established their eligibility to share in the Net Settlement Fund – *i.e.*, "Authorized Claimants" – the Claims Administrator calculated their Recognized Claim amounts in accordance with the formulas set forth in the Court-approved Plan of Allocation. Mahan Decl. ¶ 16. The Claims Administrator has performed these calculations for the claimants who submitted eligible claims by the December 21, 2021 claims deadline, as well as for the 10,510 claimants who submitted late but otherwise eligible claims. The total recognized loss for Claims submitted by eligible claimants is $44,130,671.50. ¶ 36.

Upon Court approval of the Claims Administrator's determinations regarding acceptance and rejection of claims, the Claims Administrator will aggregate all the Recognized Loss amounts, calculate each Authorized Claimant's *pro rata* share of the total (*i.e.*, the percentage of the total Recognized Loss that is represented by the Authorized Claimant's specific Recognized Loss Claim) and multiply these percentages by the Net Settlement Fund to determine the amount payable to each Authorized Claimant. Mahan Decl. ¶ 40. In accordance with the Plan of Allocation, Authorized Claimants whose *pro rata* shares would result in a payable amount less than $10.00 will not receive a distribution from the Net Settlement Fund. *Id.*

- 4 -  LEAD PLAINITFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISTRUBUTE THE NET SETTLEMENT FUND

A.    THE COURT SHOULD AUTHORIZE INCLUSION OF CLASS MEMBERS WHO SUBMITTED LATE CLAIMS IN THE SETTLEMENT DISTRIBUTION

As set forth in the Court-approved Notice, the deadline for submission of Proof of Claim forms was December 21, 2021.  A total of 18,377 claims were received after that date, 10,510 of which were otherwise valid.  Mahan Decl. ¶ 27.  Although they were submitted after the deadline, these claims were submitted while the claims administration process was ongoing and did not result in any delay of the distribution of the Settlement proceeds.  *Id.*  Per ¶ 5.8 of the Stipulation of Settlement, and in the interests of providing a recovery to as many Class Members as possible, Lead Plaintiff respectfully submits that claimants who submitted late but otherwise eligible claims should be treated as Authorized Claimants and should be included in the distribution of the Net Settlement Fund, as the processing of these claims did not materially delay the distribution.  Mahan Decl. ¶ 27.

This Court has broad and inherent equitable powers to permit distributions to claimants whose claims were submitted late.  *In re TASER Int'l, Inc. Sec. Litig.*, No. CV-05-115-PHX-SRB, 2009 WL 10707825, at *2 (D. Ariz. July 15, 2009) ("This Court has discretion to allow or disallow late claims in the distribution of a large class action settlement fund."); *Connor v. JPMorgan Chase Bank, N.A.*, No. 3:10-CV-1284-GPC-BGS, 2021 WL 1238862, at *1 (S.D. Cal. Apr. 2, 2021) ("The Court has 'broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds.'" (quoting *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990)); *Blank v. Jacobs*, No. 03-CV-2111 JS WDW, 2013 WL 1310503, at *2-3 (E.D.N.Y. Mar. 27, 2013) (permitting the inclusion of late filed claims because their inclusion did not cause any delay in the settlement distribution).  "A primary use of these equitable powers is balancing the goals of expedient settlement distribution and the consideration due to late-arriving class members." *In re Orthopedic Bone Screw Prods.*

*Liab. Litig.*, 246 F.3d 315,321 (3d Cir. 2001). *See also Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2019 WL 13179077, at *1 (S.D. Cal. June 3, 2019) (granting plaintiffs' request "to accept claims filed after the original cutoff date... as it will not result in delay, allows additional class members to recover under the terms of the settlement, and does not impose any further obligation on [d]efendants."); Fed. Judicial Ctr., Manual for Complex Litigation Third S. 30.47 (1995) ("Adequate time should be allowed for late claims before any refund or other disposition of settlement funds occurs.").

While Lead Plaintiff believes that the Late Claimants' claims should be accepted, it is also necessary to implement a final cut-off date after which no more claims may be accepted, so that an orderly distribution can be made and the Class will not be prejudiced by delay. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("[A] cutoff date is essential and at some point the matter must be terminated."). Accordingly, Lead Plaintiff requests that the Court order that any late claims *not* identified on Exhibit C-2 to the Mahan Declaration shall not be entitled to share in any distributions of the Net Settlement Fund.

**B.      THE COURT SHOULD APPROVE THE CLAIMS ADMINISTRATOR'S ADMINISTRATIVE DETERMINATIONS AND AUTHORIZE DISTRIBUTION OF THE NET SETTLEMENT FUND**

Lead Plaintiff proposes to distribute the Net Settlement Fund to Authorized Claimants whose claims total at least $10.00 at this time, after payment of the remaining balance of the Claims Administrator's fees and expenses and a reserve for tax preparation expenses. Lead Plaintiff submits that the determinations of the Claims Administrator, as explained in the Mahan Declaration and the exhibits thereto, are reasonable, appropriate, and in accordance with the Plan of Allocation, and should be approved by the Court.

As noted above, the Claims Administrator has provided notice to those claimants whose claims were rejected and has informed those claimants of their right to seek judicial review of the

- 6 -  LEAD PLAINITFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISTRUBUTE THE NET SETTLEMENT FUND

Claims Administrator's determination.  The Claims Administrator notified all of the rejected Claimants of the disposition of their claims with a Deficiency Notice.  Mahan Decl. ¶ 29.

Accordingly, it is respectfully submitted that the Court should adopt the Claims Administrator's determinations and (i) authorize distribution of the Net Settlement Fund to the Authorized Claimants whose claims calculate to at least $10.00 on a *pro rata* basis (as provided in the Plan of Allocation), based on the Recognized Loss amounts set forth in Exhibit C-1 to the Mahan Declaration, and (ii) approve the rejection and non-payment of the ineligible claims listed in Exhibit C-3 to the Mahan Declaration.  The Court should also approve payment to the Claims Administrator for any costs and expenses which have not already been paid and for its costs and expenses to complete the initial distribution.  Mahan Decl. ¶ 39.  These amounts total $386,162.12.  Berger Decl. ¶ 3.

For any funds remaining a reasonable time following the initial distribution of the Net Settlement Fund, after payment of claims administration costs as requested herein and after the Claims Administrator has made reasonable and diligent efforts to contact claimants who have not cashed their payments, the Claims Administrator will consult with Lead Counsel to determine if a redistribution of the remaining Net Settlement Fund to Class Members who cashed their initial distribution check and who would receive at least $10.00 is cost effective, after taking into account payment of any additional costs and expenses that would be associated with a redistribution.

**C.    THE COURT SHOULD RELEASE ANY FURTHER CLAIMS AGAINST THE NET SETTLEMENT FUND**

To allow for the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification,

- 7 -  LEAD PLAINITFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISTRUBUTE THE NET SETTLEMENT FUND

calculation, tabulation or any other aspect of the processing of Claims submitted in connection with the Settlement of the Action, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising from such involvement.  Accordingly, Lead Plaintiff requests that this Court release and discharge all Persons who are involved in the review, verification, calculation, tabulation or any other aspect of the processing of the Claims submitted in connection with the Settlement of the Action, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and bar all Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiff or Lead Counsel, or any other Person released pursuant to the Settlement beyond the amounts allocated to Authorized Claimants.

### D.    THE COURT SHOULD AUTHORIZE THE EVENTUAL DESTRUCTION OF CLAIMS FORMS AND RELATED DOCUMENTS

Lead Plaintiff further requests that the Court permit the Claims Administrator to destroy any paper copies of Proof of Claim forms and related paper documentation one year after the final distribution of the Net Settlement Fund, and any electronic copies of those documents three years after the final distribution of the Net Settlement Fund.

## II.    CONCLUSION

Based on the foregoing reasons, and the entire record herein, Lead Plaintiff respectfully requests that this Court grant Lead Plaintiff's Motion for Approval to Distribute Net Settlement Fund and enter the proposed order submitted herewith.

DATED: March 5, 2024                    Respectfully submitted,


By: /s/ *Daniel L. Berger*


**GRANT & EISENHOFER P.A.**
Daniel L. Berger (admitted pro hac vice)
Caitlin M. Moyna (admitted pro hac vice)
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile:  (646) 722-8501
Email:  dberger@gelaw.com
        cmoyna@gelaw.com

*Lead Counsel for the putative class*
*and*

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
**Timothy S. DeJong**, OSB No. 94066
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email:  tdejong@stollberne.com


*Liaison Counsel for the putative class*


- 9 -  LEAD PLAINITFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISTRUBUTE THE NET SETTLEMENT FUND